UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MELANIE M. TANDIAMA and ANGELITO G. TANDIAMA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NOVASTAR MORTGAGE, INC., et al., <br><br> Defendants. | CASE NO. C03-909JLR <br><br> ORDER |

## I. INTRODUCTION

This matter comes before the court on Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 145). Having reviewed all of the pleadings filed in connection with the underlying motion, the court GRANTS in part and DENIES in part Plaintiffs' motion for partial summary judgment.

## II. BACKGROUND

Plaintiffs Melanie, Angelito, and Juliana Tandiama[1] ("the Tandiamas") filed suit against Defendant NovaStar Mortgage, Inc. ("NovaStar") alleging multiple state and federal law violations centering around NovaStar's undisputed failure to provide them

---

[1] Juliana Tandiama passed away during the course of this litigation and as a result, Plaintiffs substituted the Estate of Juliana Tandiama as a party to this action. See Third Am. Compl., Dkt. # 61.

ORDER – 1

with a written good faith estimate prior to closing indicating that NovaStar paid their mortgage broker a yield-spread premium ("YSP") in connection with their loan.[2] NovaStar subsequently filed counterclaims against the Tandiamas alleging fraud, negligent misrepresentation, and civil conspiracy, based on false employment information contained in Juliana Tandiama's loan application.[3] By filing the present motion, Plaintiffs seek partial summary judgment on NovaStar's counterclaims and related affirmative defenses, and a ruling that NovaStar's failure to disclose the YSP, in writing and before closing, constitutes an unfair and deceptive act under the Washington Consumer Protection Act ("CPA").

For purposes of this motion only, the Tandiamas concede that the following disputed facts are true in favor of NovaStar, the non-moving party. On February 14, 2002, Juliana Tandiama signed a loan application falsely indicating her employment as a "resident manager" of an elderly home earning $5,000.00 per month, when in reality she was a retired, 82-year-old receiving $555.00 per month in social security payments. Despite these realities, the owner of Juliana Tandiama's false place of employment,

---

[2]Although the Tandiamas originally filed suit (along with two other named Plaintiffs) on behalf of a class of similarly situated individuals, the court held that the fraud allegations surrounding the Tandiamas' claim prevented them from serving as class representatives. Order, Dkt. # 137 at 17 (Nov. 23, 2004).

[3]Although NovaStar's counterclaims for fraud and civil conspiracy also rest on its allegation that Juliana Tandiama's loan application contained "falsely notarized documents" and Plaintiffs move for summary judgment on this basis, NovaStar appears to have dropped this allegation given that it devotes no briefing to this issue in opposition to summary judgment. Answer at ¶¶ 181, 191, 208. Thus, the court assumes that the alleged false employment information contained in Juliana Tandiama's loan application provides the sole basis for NovaStar's counterclaims.

ORDER – 2

Marietta Morales, verified Juliana Tandiama's employment in writing[4] and in a telephone call with a NovaStar employee. Juliana Tandiama reaffirmed her false employment information at closing on April 16, 2002 in her final loan papers. NovaStar contends that these acts reveal the Tandiamas' scheme, along with their mortgage broker, Marjorie Gabriel, to defraud it after earlier attempts to refinance their home failed as a result of Melanie and Angelito Tandiama's unfavorable credit rating and debt level.

It is undisputed that Melanie and Angelito Tandiama deeded their interest in their jointly owned home to Juliana Tandiama (Angelito's mother) to enable her to obtain a mortgage loan on their behalf. Juliana Tandiama applied for a "stated income" loan[5] from NovaStar which requires borrowers (1) to have a credit score of 660, (2) no late mortgage payments for the past two years, and (3) verified employment. On March 13, 2002, NovaStar obtained Juliana Tandiama's credit report which listed her average credit score as 660 and did not list any late mortgage payments. The credit report also indicated, however, that at least one agency reported Juliana Tandiama as being "retired" and "unemployed." NovaStar did not inquire into this discrepancy or require additional information from Juliana Tandiama regarding her alleged employment, such as a W-2 statement or pay stub. Instead, NovaStar accepted Juliana Tandiama's loan application upon verifying her employment.

The parties also do not dispute that NovaStar and its mortgage broker never provided the Tandiamas with a written good faith estimate disclosing the YSP paid in

---

[4]The court notes that the "Verification of Employment" form allegedly signed by Ms. Morales indicates Juliana Tandiama's employment at the elderly home without specifying her salary. Instead of listing Juliana Tandiama's pay rate, the form contains a large "X" over the grid where an employee's base pay, overtime, commissions, bonus, and other compensation, are normally listed. Weaver Decl., Exh. 6.

[5]This loan earns its name from NovaStar's practice of first verifying a borrower's employment and then relying on the borrower's stated income in the loan application.

ORDER – 3

connection with their mortgage, either at the time of extending credit or within three business days of receiving Juliana Tandiama's loan application. Although the Tandiamas received two good faith estimates from NovaStar dated December 14, 2001, these estimates pre-date Juliana Tandiama's loan application by two months and her closing by four months. Further, the estimates disclose an anticipated interest rate of 9.25% and 14%, as well as an anticipated "mortgage broker fee" of 2%. NovaStar contends that Gabriel verbally explained that it would pay a mortgage broker fee, or YSP, in connection with their mortgage and that the Tandiamas did not object, although the Tandiamas dispute that this conversation ever took place. Ultimately, NovaStar charged Juliana Tandiama an interest rate of 8.5% and paid her mortgage broker a YSP in the amount of $2,460.00.

### III. DISCUSSION

**A.  Legal Standard**

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial responsibility, the burden shifts to the non-moving party to establish that a genuine issue as to any material fact exists. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Evidence submitted by a party opposing summary judgment is presumed valid, and all reasonable

inferences that may be drawn from that evidence must be drawn in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The non-moving party cannot simply rest on its allegation without any significant probative evidence tending to support the complaint. See U.A. Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.

**B.     NovaStar's Counterclaims**

The Tandiamas contend that NovaStar's counterclaims for fraud, negligent misrepresentation, and civil conspiracy all fail because NovaStar could not have justifiably relied on Juliana Tandiama's false employment information in light of the March 13, 2002 credit report indicating her status as "retired" and "unemployed." Given that both fraud and negligent misrepresentation require justifiable reliance as a necessary element, the court focuses its inquiry solely on whether NovaStar's reliance on Juliana Tandiama's false employment information was justified. Guarino v. Interactive Objects, Inc., 86 P.3d 1175, 1191 (Wash. Ct. App. 2004) (stating elements of fraud); Lawyers Title Ins. Cop. v. Baik, 55 P.3d 619, 623 (Wash. 2002) (stating elements of negligent misrepresentation). Drawing all reasonable inferences in favor of NovaStar and assuming that Juliana Tandiama knowingly misrepresented her employment information on her loan application, the court finds that NovaStar's reliance on such information was not justified and therefore dismisses NovaStar's counterclaims and related affirmative defenses.

For both fraud and negligent misrepresentation claims, a party's reliance is justified when it is "reasonable under the circumstances." Williams v. Joslin, 399 P.2d 308, 309 (Wash. 1965); Lawyers Title, 55 P.3d at 626-27. A party with expert

ORDER – 5

knowledge and experience "to evaluate that which he sees and appreciate the obvious falsity of the claimed representation" cannot rely reasonably on another party's representation. Puget Sound Nat'l Bank v. McMahon, 330 P.2d 559, 561 (1958). Further, a party's right to rely on a representation is "inseparably connected" with the duty to use diligence in evaluating the representation. Skagit State Bank v. Rasmussen, 745 P.2d 37, 41 (Wash. 1987) (citations omitted).

Washington courts have repeatedly held that a party's reliance is unreasonable where the party possesses written documents, knowledge, or expertise indicating the falsity of the representations at issue. Williams, 399 P.2d at 309 (buyer's fraud claim precluded by his failure to examine receipts in his possession revealing that seller's oral representation was false); McMahon, 330 P.2d at 561 (buyer's many years of business experience and investigation of the property precluded her from claiming fraud); Hoel v. Rose, 105 P.3d 395, 398-99 (Wash. Ct. App. 2004) (buyers' negligent misrepresentation claim dismissed for failure to investigate or resolve conflict between seller's representation of the property boundaries and the pre-closing appraisal); Skagit, 745 P.2d at 41 (landowner prevented from using misrepresentation defense when he failed to read loan documents demonstrating the falsity of his partner's misrepresentation); contra Lawyers Title, 55 P.3d at 628 (plaintiff justifiably relied when it "had nothing before it that would have contradicted the written assurances" of defendant).

Here, it is undisputed that NovaStar possessed a credit report, approximately one month prior to closing, indicating that Juliana Tandiama was 82 years old, retired, and unemployed. NovaStar's employment verification form on file for Juliana Tandiama indicated her employment at the elderly home, but omitted any information about her income. Weaver Decl., Exh. 6. Rather than verifying her alleged $5,000.00 per month salary, the form contains three large "X's" over the categories listing an applicant's base

ORDER – 6

pay, overtime, commissions, and bonus, among other things. Crossed out in the areas of income verification, NovaStar's form fails to state any income for Juliana Tandiama. NovaStar's reliance on this form was unreasonable in light of its own policy to verify the "income stated" on an employment verification form for W-2 wage earners, such as Juliana Tandiama, and to assess whether it is "reasonable for the nature and length of employment."[6] Weaver Decl., Exh. 2 at NS 008760. Further, the March 13, 2002 credit report demonstrated the falsity of Juliana Tandiama's alleged employment.

NovaStar's reliance on bankruptcy cases applying the fraud exception under 11 U.S.C. § 523(a)(2)(A) is unavailing.[7] While the court recognizes the Ninth Circuit's holding that Washington's common law fraud claim mirrors the bankruptcy code's fraud exception for purposes of collateral estoppel, the court finds that none of the bankruptcy cases applying this exception alter or conflict with its holding. In re Diamond, 285 F.3d 822, 827-28 (9th Cir. 2002) (holding "reliance issues in the [Washington] state law fraudulent misrepresentation claim are identical to those in the nondischargeability claim under § 523(a)(2)(A)"). Moreover, the bankruptcy and Washington cases NovaStar relies on support Washington's well-established principle precluding a party from claiming fraud where the party has information, knowledge, or experience indicating the falsity of

---

[6] The court notes that NovaStar also possessed expertise in the area of subprime lending (*i.e.*, providing mortgage loans to borrowers with unfavorable credit or low income) given its position as one of the largest lenders of its kind. Weaver Decl., Exh. 1 at 2 (listing NovaStar as the 21st largest subprime lender). NovaStar's expertise provides another potential basis suggesting NovaStar's reliance was unreasonable in light of the circumstances. See McMahon, 330 P.2d at 561 (holding buyer's many years of business experience and investigation of the property prevented her from claiming fraud).

[7] As a general matter, the court finds NovaStar's citation to out-of-circuit, district bankruptcy cases unhelpful and unnecessary given that the court must determine whether the Tandiamas' alleged conduct constitutes fraud and negligent misrepresentation under Washington law.

ORDER – 7

the alleged misrepresentation. See, e.g., Field v. Mans, 516 U.S. 59, 71 (1995) (describing justifiable reliance as requiring a person "to use his senses," and preventing recovery where a person "blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.") (internal citation omitted); Westby v. Gorsuch, 50 P.3d 284, 293 (Wash. Ct. App. 2002) (noting justifiable reliance "involves the question of [the plaintiff's] diligence in ascertaining the facts for himself . . . [and] his exercise of care and judgment in acting upon representations which run counter to knowledge within his possession or reach.") (quoting Rummer v. Throop, 231 P.2d 313, 319 (Wash. 1951)).

Thus, the court finds that NovaStar's reliance was not justified under the circumstances and DISMISSES its counterclaims for fraud, negligent misrepresentation, and civil conspiracy,[8] as well as its related affirmative defenses.[9]

**C.    The Tandiamas' CPA Claim**

The Tandiamas also seek a partial summary judgment ruling that NovaStar's failure to provide them with a timely, written good faith estimate disclosing the YSP paid to their broker in connection with their mortgage, under the Real Estate Settlement

---

[8]NovaStar's civil conspiracy counterclaim is predicated on its fraud claim. Answer at ¶¶ 207, 209, 211; Def. Resp. at 18 ("the evidence shows that Melanie and Juliana Tandiama combined with each other and with Ms. Gabriel to fraudulently acquire two mortgage loans from NovaStar"). Given that NovaStar's fraud claim is not actionable, the court must dismiss NovaStar's counterclaim for civil conspiracy. Northwest Laborers-Employers Health & Sec, Trust Fund v. Philip Morris, Inc., 58 F. Supp. 2d 1211, 1216 (W.D. Wash. 1999) (recognizing Washington civil conspiracy claims "must be premised on underlying 'actionable wrongs'" and consequently fail "if the underlying act or claim is not actionable") (internal citations omitted).

[9]The court specifically dismisses NovaStar's fourth affirmative defense (contributory negligence, mistake, fraud), ninth affirmative defense (estoppel), sixteenth affirmative defense (any defense based on legal or equitable grounds), and seventeenth affirmative defense (misrepresentation and fraud) to the extent the defenses are based on the Tandiamas' alleged scheme to defraud NovaStar.

ORDER – 8

Procedures Act ("RESPA"), constitutes an unfair and deceptive practice under the CPA as a matter of law.  RESPA requires that a lender or mortgage broker provide a borrower with a written good faith estimate disclosing the costs and fees incurred with the mortgage before the credit is extended, or within three days of receiving the loan application, whichever happens first. 12 U.S.C. § 2604(c); 15 U.S.C. § 1638(b)(2); 24 C.F.R. § 3500.7(a), (b).  The good faith estimate must include "indirect payments or back-funded payments to mortgage brokers" arising from the mortgage transaction, including "a mortgage broker fee," otherwise known as a YSP.  24 C.F.R. § 3500, App. A, Section L; 24 C.F.R. § 3500, App. C (sample form of good faith estimate).  Two courts in this district have held that a creditor's failure to provide timely disclosure under RESPA constitutes an unfair and deceptive practice under the CPA.  Anderson v. Wells Fargo Home Mortgage, Inc., 259 F. Supp. 2d 1143, 1147-48 (W.D. Wash. 2003); Brazier v. Sec. Pac. Mortgage, Inc., 245 F. Supp. 2d 1136, 1142 (W. D. Wash. 2003).

     Here, it is undisputed that NovaStar failed to provide the Tandiamas with a written good faith estimate disclosing the YSP paid in connection with their mortgage before the earlier of (1) extending credit or (2) within three days of receiving Juliana Tandiama's loan application.  The two December 14, 2001 good faith estimates received by the Tandiamas pre-date Juliana Tandiama's loan application by two months and the loan closing by four months.  Marjorie Gabriel, the Tandiamas' mortgage broker, confirmed at her deposition that the Tandiamas failed to receive a timely, written good faith estimate by testifying that she *orally* explained the YSP to the Tandiamas at closing but "I don't put anything in writing."  Weaver Decl., Exh. 13 at 2; Brown Decl., Exh. 15, at 124.  Consistent with other courts in this district, the court finds that the failure to provide a timely, written good faith estimate disclosing the YSP paid to a mortgage broker

ORDER – 9

constitutes an unfair and deceptive practice under the CPA. Anderson, 259 F. Supp. 2d at 1147-48; Brazier, 245 F. Supp. 2d at 1142.

NovaStar's attempts to discredit this holding by arguing that the CPA exempts transactions regulated under federal law, and its reliance on two unpublished bankruptcy cases from this district for this proposition, are unavailing. In relevant part, the CPA provides, "[n]othing in this chapter shall apply to . . . actions or transactions permitted by any other regulatory body . . . [of] the United States." RCW § 19.86.170. NovaStar has failed to identify a regulatory body permitting its conduct (*i.e.*, its failure to provide a timely, written good faith estimate). Indeed, RESPA and Washington law require conduct to the contrary.[10] Further, the two unpublished bankruptcy decisions upon which NovaStar relies fail to address the issue at hand and therefore fail to compel a different result. The bankruptcy court determined that the federal Truth in Lending Act, Depository Institution Deregulation and Monetary Control Act, and Federal Trade Commission Act governed whether a state-chartered bank provided adequate disclosure of charges and whether the charges were legal. In re McDonald, No. 03-13790, slip op. at 6 (Bankr. W.D. Wash. May 4, 2004); In re Williams, No. 04-10712, slip op. at 6 (Bankr. W.D. Wash. Jan. 27, 2005) (incorporating by reference the legal analysis articulated in In re McDonald).

Nonetheless, the allegations of fraud concerning the Tandiamas, which this court must accept as true for purposes of summary judgment, prevent it from ruling that NovaStar's failure to provide a timely, written good faith estimate constitutes an unfair

---

[10]Washington's Mortgage Brokers Practice Act incorporates RESPA's disclosure requirements and requires a mortgage broker to provide a borrower with a written itemization or good faith estimate, within three days of receiving the borrower's loan application, specifying all fees and costs the borrower is required to pay in connection with the mortgage that will benefit the broker. RCW § 19.146.030(1), (2).

ORDER – 10

and deceptive practice under the CPA. "The CPA exists to protect consumers, not to aid and abet fraud." Mutual of Enumclaw Ins. Co. v. Cox, 757 P.2d 499, 504 (Wash. 1988). Consequently, Washington courts have consistently rejected plaintiffs' attempts to recover under the CPA where they have engaged in fraud. Id.; Tornetta v. Allstate Ins. Co., 973 P.2d 8, 12 (Wash. Ct. App. 1999); Wickswat v. Safeco Ins. Co., 904 P.2d 767, 774 (Wash. Ct. App. 1995). Whether the Tandiamas engaged in a scheme to defraud NovaStar is a hotly contested issue of material fact, which can only be resolved at trial. If the fact finder determines that the Tandiamas engaged in fraud, then their CPA claim must fail as a matter of law. E.g., Wickswat, 904 P.3d at 774 ("we find that the trial court in this case correctly directed the jury not to consider [plaintiff's] bad faith and CPA violation claims if it found that he intentionally misrepresented or concealed material facts during the claims process."). Thus, the court DENIES the Tandiamas' motion for partial summary judgment on this issue and reserves it for trial.

## IV.   CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 145). NovaStar's Motion for Partial Summary Judgment (Dkt. # 158), filed in opposition to Plaintiffs' motion and re-noted by agreement of the parties to July 1, 2005, is moot in light of this court's decision.

Dated this 31st day of May, 2005.

JAMES L. ROBART
United States District Judge

ORDER – 11