UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MELANIE M. TANDIAMA and ANGELITO G. TANDIAMA, et al.,<br><br>           Plaintiffs,<br><br>    v.<br><br>NOVASTAR MORTGAGE, INC., et al.,<br><br>           Defendants. | CASE NO. C03-909JLR<br><br>ORDER |

## I.    INTRODUCTION

This matter comes before the court on Plaintiffs' Motion to Enjoin Foreclosure Sale Pending Trial (Dkt. # 168). Having read the papers filed in connection with this motion, the court GRANTS Plaintiffs' motion and as a result, orders Plaintiffs to pay $1,900.59 to the clerk of court each month.

## II.    BACKGROUND

Plaintiffs Melanie, Angelito, and Juliana Tandiama[1] filed suit on behalf of themselves and a class of similarly situated individuals against Defendant NovaStar Mortgage, Inc. ("NovaStar"), alleging various violations of state and federal law in connection with their mortgage refinance. Having previously established the facts comprising this action in multiple prior decisions, the court incorporates those orders by

---

[1] The court notes that since Juliana Tandiama's passing, the Plaintiffs have substituted the Estate of Juliana Tandiama as a party in this action. See Third Am. Compl., Dkt. # 61.

ORDER – 1

reference and sets forth only the facts related to the current motion. E.g., Orders, Dkt. ## 137, 167.

In April 2002, Juliana Tandiama refinanced the home she shared with her son and daughter-in-law by obtaining two deeds of trust from NovaStar for $164,000 and $41,000, respectively. NovaStar issued the deeds despite the fact that Juliana Tandiama's loan applications contained falsified employment information, the details of which are strongly disputed by the parties. The first note obligated the Tandiamas to pay monthly principal and interest payments of $1,261.02, while the second note obligated the Tandiamas to pay $485.80.[2] The Tandiamas regularly paid their mortgage payments until December 2003, when they stopped due to their failure to afford the payments and NovaStar's alleged failure to properly credit their payments.[3] The Tandiamas have since failed to make any payments on either deed of trust for the last 20 months. On April 29, 2005, NovaStar began non-judicial foreclosure proceedings against the second deed of trust, and is currently preparing to initiate a foreclosure action on the first deed of trust. Consequently, the Tandiamas filed the present motion for a preliminary injunction to enjoin the foreclosure of their home.

### III.   DISCUSSION

**A.   Legal Standard**

To obtain a preliminary injunction, the moving party must demonstrate (1) a

---

[2] Additionally, the notes required the Tandiamas to pay monthly escrow payments of $125.10 for taxes and $28.67 for hazard insurance.

[3] Plaintiffs' additional reason for not paying – NovaStar's contention in its briefing that Melanie and Angelito Tandiama lacked standing because they were not obligated on the loans – lacks merits given that the Tandiamas ceased paying five months before NovaStar adopted this position. Def.'s Reply, Dkt. # 72 at 2.

ORDER – 2

combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions exist and the balance of hardships tips in its favor.[4] Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1120 (9th Cir. 2005); see also Fed. R. Civ. P. 65. The two prongs of the alternative test are not separate inquiries, but rather "extremes of a single continuum." Clear Channel Outdoor, Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003). Consequently, "the required degree of irreparable harm increases as the probability of success decreases." Flowers, 408 F.3d at 1120. Given that preliminary injunctions are "an extraordinary and drastic remedy," courts refrain from granting them unless the moving party carries the burden of persuasion by a "clear showing." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). On appeal, a district court's order regarding preliminary injunctive relief is "subject to limited review and will be reversed only if the district court 'abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact.'" Flowers, 408 F.3d at 1120-21 (quoting United States v. Peninsula Commc'ns, Inc., 287 F.3d 832, 839 (9th Cir. 2002)).

**B.     Motion for Preliminary Injunction**

As an initial matter, the court finds and NovaStar does not dispute that it has supplemental jurisdiction to enter injunctive relief regarding the foreclosure action. See 28 U.S.C. § 1367(a) (providing for supplemental jurisdiction where a claim is "so related" to the present action that it forms "part of the same case or controversy").

---

[4] Although this test is commonly known as the "alternative test," the Ninth Circuit also employs the "traditional test," requiring the court to find that "(1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief." Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987). Here, the Tandiamas appear to rely on the first prong of the "alternative test" to support their motion for a preliminary injunction.

ORDER – 3

NovaStar seeks to foreclose on the same mortgage that the Tandiamas allege violates federal and state law. Thus, the court will consider the Tandiamas' motion to enjoin the foreclosure sale of their home.

The Tandiamas contend that injunctive relief is warranted under Washington's Deed of Trust Act, RCW § 61.24, and the federal preliminary injunction standard, Fed. R. Civ. P. 65. The Tandiamas' statutory argument, however, rests on a prior version of the statute that prevented trustees from initiating foreclosure proceedings when an "action is pending on an obligation secured by the deed of trust." RCW § 61.24.030(4) (1985). Relying on this provision, the Tandiamas contend that the case at bar constitutes "an action pending on the obligation," requiring the enjoinment of the foreclosure proceedings. Yet, the Washington state legislature amended this provision in 1985 to preclude foreclosure proceedings only where the action is "commenced by the *beneficiary* of the deed of trust now pending," rather than actions commenced by the grantor, or other non-beneficiaries.[5] Id. (emphasis added). Consequently, after the amendment, the beneficiary of the deed of trust, in this case NovaStar, must have sought satisfaction of the debt to prevent foreclosure.

Here, the Tandiamas filed suit and NovaStar defended the action while asserting related counterclaims. Although the Tandiamas argue for the first time in their reply that NovaStar's counterclaims constitute an "action on the obligation," or a "concurrent action" prohibited by Washington's foreclosure act, RCW § 61.12.120, the court finds this argument unavailing. The court has dismissed NovaStar's counterclaims for fraud, negligent misrepresentation, and civil conspiracy and as a result, NovaStar is no longer

---

[5]The legislature amended the statute after the Washington Supreme Court held that a grantor's action, seeking damages and reconveyance of the deed of trust, constituted "an action on the obligation" under the 1985 statute, and therefore prevented the trustee from initiating foreclosure proceedings. Cox v. Helenius, 693 P.2d 683, 686 (1985).

ORDER – 4

pursuing an action against the Tandiamas apart from the foreclosure proceedings. Thus, there is not a separate action by NovaStar "now pending" to seek satisfaction of the Tandiamas' deed of trust precluding foreclosure.

Alternatively, the Tandiamas argue that a preliminary injunction is appropriate under the Ninth Circuit's alternative preliminary injunction test, contending that they have a strong likelihood of success on the merits and that irreparable injury will result if NovaStar forecloses on their home. Setting the parties' merits-based arguments aside, the court finds that the Tandiamas will suffer irreparable harm if they lose their home and are forced to relocate. A foreclosure sale would leave Melanie and Angelito Tandiama, their three children, and Melanie's elderly mother without the home they have shared for the last decade. There is no doubt that foreclosing on the deeds of trust would deliver a devastating emotional and financial blow to the Tandiamas.

Having demonstrated a strong showing of irreparable harm, the Tandiamas' required showing of probable success on the merits is decreased. Flowers, 408 F.3d at 1120. Previously, the court held that NovaStar's failure to provide the Tandiamas with a timely, written good faith estimate disclosing the yield spread premium it paid in connection with their mortgage constitutes an unfair and deceptive practice under Washington's Consumer Protection Act. Order, Dkt. # 167 at 10. The Tandiamas rely on this finding alone to demonstrate their likelihood of success on the merits. Yet, the court refrained from granting summary judgment in favor of the Tandiamas on their CPA claim because of the "hotly contested" factual issues surrounding the false employment and income information contained in Juliana Tandiama's loan application. Id. Since this ruling, both parties have developed further evidence which they argue supports their

ORDER – 5

version of events.[6] Neither party's evidence, however, resolves the overriding factual question of whether the Tandiamas engaged in a scheme to defraud NovaStar, which can only be resolved at trial. This question will likely boil down to a credibility determination in light of the vastly different stories of what occurred. Nonetheless, the court finds that injunctive relief is warranted in light of the irreparable harm that would result from foreclosing on the Tandiamas' home and the Tandiamas' at least even chance of prevailing on the merits of their CPA claim.

Under Washington law, however, the court cannot restrain the foreclosure without requiring the Tandiamas to "pay to the clerk of the court the sums that would be due on the obligation secured by the deed of trust if the deed of trust was not being foreclosed." RCW § 61.24.130(1). Thus, although the court can stop the sale of the Tandiamas' home, it cannot allow them to keep living in their home without paying their mortgage. RCW § 61.24.130(1)(a) (requiring the defaulting party to pay the "principal, interest, and reserves" owed to the clerk of court every 30 days).

Here, the Tandiamas are obligated under the second deed of trust to make monthly payments of $485.80 for principal and interest, and $153.77 for taxes and insurance associated with their required monthly escrow payments. Further, the Tandiamas owe $1,261.02 per month for the principal and interest on the first deed of trust. As a result of enjoining the foreclosure, the court orders the Tandiamas to pay a total of $1,900.59 each month to the clerk of court. See RCW § 61.24.130(1) (providing that the court may condition granting the injunction on additional security in the "form and amount as the court deems proper, for the payment of such costs and damages . . . as may be later found

---

[6]At her recent deposition, Melanie Tandiama authenticated her mother-in-law's signature on all of the operative loan documents, supporting NovaStar's version of events, while the mortgage broker and escrow agent testified at their depositions that Juliana Tandiama signed pre-dated, blank forms, supporting the Tandiamas' version of the story.

ORDER – 6

by the court to have been incurred or suffered by any party by reason of the restraining order or injunction."). The court requires the Tandiamas to make all monthly payments owed on the first and second deeds of trust because enjoining the foreclosure deprives NovaStar from recovering nearly two years of unpaid principal and interest. Although the court is sympathetic to the Tandiamas' financial plight and the alleged violations that occurred, the Tandiamas cannot remain in their home without making their mortgage payments.[7]

### IV.   CONCLUSION

For the reasons stated above, the court GRANTS Plaintiffs' Motion to Enjoin Foreclosure Sale Pending Trial (Dkt. # 168) and orders Plaintiffs to pay $1,900.59 to the clerk of court each month.

DATED this 2nd day of September, 2005.

JAMES L. ROBART
United States District Judge

---

[7]As a result of enjoining the foreclosure, the court need not address the Tandiamas' additional arguments regarding the trustee's alleged conflict of interest (now resolved with the selection of a new trustee), and NovaStar's "repeated calls." The court notes, however, that NovaStar must direct all correspondence regarding the Tandiamas to their counsel unless otherwise required by state law.

ORDER – 7